Sam Brown (State Bar No. 308558)
sam@employmentattorneyla.com
3600 Wilshire Blvd, Suite 1908
Los Angeles, CA 90010
Phone: (213) 310-8301
Fax: (213) 301-8302

Attorneys for Plaintiff LAURA GRILLO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

LAURA GRILLO, an individual,

Plaintiff,

v.

ASTON NEWPORT BEACH LLC, a Delaware Company; U.S. AUTO TRUST a Delaware Company.

Defendants.

Case No: 8:24-552

**COMPLAINT FOR:**
 **1. Violations of Title VII of the Civil Rights Act of 1967**
 **2. Violations of the California Fair Employment and Housing Act (FEHA)**
 **3. Violations of the the Federal Equal Pay Act**
 **4. Violations of the California Equal Pay Act; and**

**Demand for Jury Trial**

Plaintiff, by and through her undersigned counsel, hereby aver as follows:

**INTRODUCTION**

1.     This action has been initiated by Plaintiff for violations of, *inter alia*, Title VII of the Civil Rights Act of 1967 and the California Fair Employment and Housing Act (FEHA) stemming from her blatantly unlawful discharge from employment on or about November 30, 2023.

**JURISDICTION AND VENUE**

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under a law of the United States and seeks redress for violations of a federal law. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claim(s) asserted herein.

4.     This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

5.     Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants conduct a vast amount of business in this judicial district and the actions and/or omissions giving rise to the legal claims set

2

forth herein occurred from this District.

## **PARTIES**

6.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.     Plaintiff is an adult female individual residing and domiciled in Irvine, California.

8.     Defendant Aston Newport Beach LLC ("ANB") is a Delaware limited liability corporation with a principal place of business at 10250 Constellation Boulevard, Suite 3050 Los Angeles, CA 90067.

9.     Defendant U.S. Auto Trust LLC ("UAT") is a Delaware limited liability corporation with a principal place of business at 10250 Constellation Boulevard, Suite 3050 Los Angeles, CA 90067.

10.     Upon information and belief, Defendant UAT operates under the name "U.S. Auto CA LLC" in the State of California.

11.     Defendants are collectively referred to as "Defendant" throughout the remainder of the Complaint unless otherwise noted.

12.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## **ADMINISTRATIVE REMEDIES**

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff initially dual filed a charge of discrimination with the EEOC and CRD on or about July 25, 2023, against Defendant.

15. Plaintiff received a Right to Sue notice for this initial charge with a mailing date of January 31, 2024.

16. Plaintiff filed a subsequent and new charge of discrimination with the EEOC and CRD on or about January 10, 2024.

17. Plaintiff received a Right to Sue notice for this subsequent charge with a mailing date of January 31, 2024.

18. Plaintiff also received a Right to Sue notice from the CRD on or about February 14, 2024.

19. Plaintiff has exhausted federal and state administrative remedies as to the allegations in this Complaint.

## **FACTUAL BACKGROUND**

20. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

21. Plaintiff hired by Defendant on or about June 13, 2022.

22. Plaintiff's job title at the time of hire was Brand Ambassador and eventually developed into a position wherein she marketed and sold luxury vehicles for the dealership.

4

23.    On or about May 19, 2023, Plaintiff was issued a temporary salesperson license by the Department of Motor Vehicles, which Plaintiff forwarded to the general manager on or about June 2, 2023.

24.    During her employment, Plaintiff worked full-time, and often worked substantially more than fifty ("50") hours per week.

25.    While employed, Plaintiff was supervised by Jeff West (General Manager) ("West").

26.    Plaintiff first filed a charge of discrimination with the EEOC against Defendants on or about July 25, 2023, after having been employed for approximately fourteen ("14") months ("the first charge").

27.    At the time she filed the first charge, Plaintiff was being subjected to nothing short of an **extremely hostile and discriminatory work environment** based on her gender and her complaints of discrimination.

28.    There were also staggering disparities in compensation between Plaintiff and her peers.

29.    By way of example and without any measure of limitation, Defendants' created culture of favoritism and better treatment of male employees in many ways:

    a. Plaintiff was left out of communications unlike male counterparts, resulting in her lacking certain knowledge, not being on equal footing with respect to updates, and causing substantial embarrassment when she interfaced with corporate management.

5

b. West has explicated indicated that Defendants would not hire a male receptionist because it is a role for an attractive woman. Moreover, he intentionally bypassed qualified applicants based upon gender.

c. West required Plaintiff to fill in as a receptionist, but not males (when a receptionist was unavailable or called out) despite her role being that of sales (like other males).

d. Plaintiff was repeatedly given varying duties that were administrative in nature and detracted from her ability to earn income in sales because she was female, unlike her male counterparts.

e. Males were given immediate compensation increases for adjusted or promoted roles. When Plaintiff was given additional titles and told she would be given a pay increase, the same was not processed and at times Plaintiff was yelled at for merely inquiring about the status.

f. West communicated to Plaintiff as if she was a child or beneath him.

g. West was on many occasions disrespectful, demeaning, and communicated to Plaintiff a voice that is nothing short of yelling and/or menacing. West did not treat male counterparts in such an abusive manner.

h. West acknowledged, greeted, and treated males warmly. However, females were typically ignored.

COMPLAINT AND DEMAND FOR JURY TRIAL

i.  There was a disparity in acknowledgement of certain holidays (i.e. Father's Day versus Mother's Day).

j.  Male salespeople were routinely congratulated for achievements, while females were not. Moreover, males were given better sales opportunities overall.

k.  Males could freely turn down work shifts, but females were given undesirable shifts or informed of days to work when a male declined shifts.

l.  West exhibited no respect for Plaintiff as a female salesperson and regularly treated her like an executive or administrative assistant waiving Plaintiff to handle non-sales or other matters.

m. Plaintiff was routinely shorted or denied entirely pay raises, commissions, and other compensation in contrast to males.

n.  Customers were often misled about Plaintiff's ability to service them (even when they requested her), while males were promptly summoned when requested by customers.

o.  Plaintiff's communications and emails were often disregarded or ignored, while questions or concerns of her male counterparts were addressed professionally and timely.

p.  Akash Singh ("Singh"), the head detailer, openly commented that Plaintiff performed oral sex at work.

COMPLAINT AND DEMAND FOR JURY TRIAL

q. A former photographer harassed Plaintiff for turning down sexual advances. Additionally:

   i. Neither Singh or the photographer suffered any meaningful repercussions, despite knowledge by management of their actions, because Defendants perpetuated a culture of gender bias, gender disparities, and gender discrimination.

   ii. To place that in perspective, upon information and belief, the photographer was terminated for making racially discriminatory comments (at a later time) to a male employee (and not for sexually harassing Plaintiff).

30.    This is only a short summary of examples for purposes of illustrating the type of environment Plaintiff was subjected to during her employment with Defendants.

31.    Defendants, through West, created a disgusting culture wherein women were treated as nothing more than glorified receptionists with glass ceilings and having value because of good looks that would appeal to potential clientele.

32.    In or around the summer of 2023, Plaintiff lodged a formal complaint of discrimination internally because her informal concerns were not being addressed.

33.    Within less than two ("2") weeks, Sarah Greene (Chief People Officer – management employed through U.S. Auto Trust, LLC) ("Greene") attempted to

COMPLAINT AND DEMAND FOR JURY TRIAL

explain there was a lack of evidence for Plaintiff's concerns and tried to **dissuade her** from even continuing with her complaints.

34.    There was no meaningful investigation into Defendants' blatant preferences for hiring women in receptionist roles, men in sales roles, and many other aspects of Plaintiff's complaints of gender disparities.

35.    Greene, through her tone and action, engaged in a minimal inquiry of others to quickly insulate Defendants' business and to discourage further complaints by Plaintiff.

36.    On or about July 31, 2023, Greene reported to Plaintiff via e-mail that Defendants engaged an attorney named Joelle Gryczman, Esq. ("Gryczman") of the Law Offices of Nancy Solomon to conduct an entirely "new" and allegedly "independent" investigation of her concerns.

37.    Despite the internal complaints, instances of clear retaliation continued.

38.    For example, Plaintiff had a client who wanted to visit a hospitality suite set up by Defendants for customers.

39.    On August 14, 2023, Plaintiff received an e-mail form her client wherein he embarrassingly indicated that he had been denied entry to the hospitality suite on or about August 13, 2023.

40.    West told Plaintiff this was due to the suite being "taken over" by corporate, but the suite remained managed by Defendants and entrance to it was at the dealership's discretion.

COMPLAINT AND DEMAND FOR JURY TRIAL

41.    The same client had previously been granted access to the hospitality suite in or around August 2022.

42.    On or about August 15, 2023, Plaintiff wrote to Greene and indicated that West had:

a.    Removed her from all weekly/regular Zoom calls with the web design team, where her input was critical given her role;

b.    Removed her from all Zoom calls and meetings for the Defendants' Pebble Beach location. Plaintiff was an Event Manager / Customer Liaison Manager/Marking Manager for that location up until the time she filed her internal complaint;

c.    Removed Plaintiff from Monterey Car Week at Pebble Beach. West told Plaintiff that no staff would be attending. Yet a male salesman attended with his girlfriend along with West.

d.    Quietly arranged Plaintiff's schedule in such a way that she would no longer to report to the business office on a weekly and/or bi-weekly basis.

e.    Attempted to interfere with a multi-million-dollar sale and withheld a $200,000.00 deposit from a client that had been wired a week prior.

f.    Denied Plaintiff's customer access to the hospitality suite above-referenced;

g.    Removed Plaintiff from virtually all event discussions and preparations.

43.     Green reported to Plaintiff on August 15, 2023, via e-mail that she had relayed the concerns to Gryczman.

44.     On or about September 6, 2023, Defendants sent a letter through their retained counsel.

45.     The letter from retained counsel dated September 6, 2023 indicated that Gryczman had concluded her "investigation" and that Defendants had received a copy of her "investigative report".

46.     Retained counsel provided in her letter what she styled as a "verbatim" summary of Gryczman's investigative findings. This was only the "factual findings and conclusions" but not the underlying witness statements or any other notes taken by Gryczman.

47.     These investigative findings were fatally flawed and amounted to nothing more than a farce.

48.     For example, Gryczman concluded that Plaintiff was and had "not" been a salesperson in her role.

49.     Gryczman then rationalized that West had legitimate reasons to treat male coworkers differently.

50.     However, Gryczman then went on to acknowledge that Plaintiff had "performed a variety of functions for the Company (beyond those of a receptionist)" and "was not in the same position as the three salespeople."

COMPLAINT AND DEMAND FOR JURY TRIAL

51.    Effectively, Gryczman almost completely ignored the fact that Plaintiff had in fact sold vehicles, making her function no different than male salespersons that also engaged in sales.

52.    The entire written tone of Gryczman's "findings" was demeaning and appeared to nothing more than a sham.

53.    For example, in writing about Plaintiff's claim of unlawful reprisal, Gryczman started a paragraph writing "Second, as to Ms. Grillo's 'retaliation' claim…" (quotations in the original).

54.    Less than a month later, Greene sent Plaintiff an e-mail on October 4, 2023, indicating (falsely) that Plaintiff was "dismissive, non-communicative, disrespectful and rude at work…"

55.    In that same e-mail, Greene acknowledged that Plaintiff had made a discrimination complaint in July 2023, but in a self-serving manner indicated that "in both instances, it was concluded that your claims were not supported by the facts that were gathered."

56.    Greene went even further in her October 4, 2023 e-mail by outrageously telling Plaintiff that the mere questioning of West was "unacceptable" when it was clear in many instances that Plaintiff was pointing out disparate treatment.

57.    Effectively Greene was discouraging Plaintiff from voicing any kind of complaint because, in her self-serving estimation, the issue had been resolved by an "independent" investigation bought and paid for by Defendants.

58.    Greene also warned Plaintiff in the October 4, 2023, e-mail that any further "unresponsive, rude, disrespectful and insubordinate behavior" to her co-workers and West would be potential grounds for termination.

59.    Greene at this juncture was also aware that Plaintiff had filed a charge of discrimination with the EEOC in or around July 2023 by virtue of the involvement of outside counsel and Gryczman.

60.    Greene's October 4, 2023, e-mail was effectively a flat-out illegal intimidation tactic to stop Plaintiff from making any type of complaints.

61.    Greene did not qualify in her e-mail in any way that Plaintiff could continue to make claims of discrimination or retaliation as she felt warranted to HR or anyone else.

62.    On October 6, 2023, Plaintiff communicated to Greene via e-mail and told her she felt as if she was being intimidated into dropping her gender discrimination claims.

63.    In her October 6, 2023, response, Plaintiff reminded Greene, amongst other things, that in or around July 2023, Greene had warned Plaintiff during a telephone conversation "not to go down this rabbit hole" with respect to her discrimination complaints.

COMPLAINT AND DEMAND FOR JURY TRIAL

64. Greene did not deny in any reply to Plaintiff that she did or did not make such a statement. This was effectively an admission by silence that she had in fact made such comments to Plaintiff via telephone.[1]

65. In or around November 2023, Plaintiff was advocating for a female co-worker who had disparate compensation from her male co-workers by sending e-mails directly to West. On some of these e-mails, Greene was copied.

66. These e-mails were sent on or about November 6, 2023 and were clear and additional forms of protected activity.

67. On or about November 9, 2023, West sent Plaintiff an e-mail chastising her for leaving work "early" on November 3, 2023, and November 5, 2023 without notifying him.

68. Plaintiff responded the same day and indicated she had left on November 3, 2023 because she got sick at work and notified the sales manager since West was in a meeting.

69. She also indicated she was still feeling sick by November 5, 2023 but reported to work nevertheless. Another employee saw that Plaintiff was sick on November 5, 2023 and told her to go home.

---

[1] *See e.g.* <u>Sun Valley Farms, LLC v. W. Veg Produce, Inc.</u>, 2022 U.S. Dist. LEXIS 195816, at *32-33 (E.D. Cal. Oct. 27, 2022) ("...the failure to reply to a writing that contains statements for which it would be natural under the circumstances for the recipient/addressee to deny if he believed the statements to be untrue may constitute an admission by silence.")

70.    Plaintiff also advised in her November 9, 2023 e-mail that she felt as if West's criticism was "harassment and a setup" given the timing of the concerns.

71.    On November 16, 2023, Plaintiff made a written complaint of sexual harassment to both West, Greene and Matthew Kaiser ("Kaiser") via e-mail.

72.    In this complaint, Plaintiff detailed that a client had come to the dealership and indicated he had been "fuckin since he was 16 years old" (implying women).

73.    Matthew Parsons ("Parsons") then looked at Plaintiff and said "kinda like you, am I right?"

74.    Plaintiff communicated that the comment was extremely inappropriate, lewd, vulgar and sexually harassing. It was made out in the open on a showroom floor in front of another male colleague.

75.    When Plaintiff asked Kaiser why he made the comment, he shrugged his shoulders, laughed and returned to his computer.

76.    In her November 16, 2023 e-mail, Plaintiff also recounted other sexual harassment complaints she made to West that went ignored, such as the complaint against the photographer and Singh.

77.    Plaintiff also noted that she was including Greene in the e-mail because she continued to be subject to sexual harassment despite making complaints of:

a.    Joe Moccia ("Moccia") continuing to refer to Plaintiff as a "snack."

COMPLAINT AND DEMAND FOR JURY TRIAL

b.    Moccia telling Plaintiff that he "googled her" late at night and insinuated that he pleasured himself by looking at photos of her.

c.    Parsons' multiple comments about Plaintiff's backside or the size of her breasts.

d.    Parsons' comments comparing Plaintiff's body to an Aston Martin DB12. Specifically, Plaintiff asked Parsons why the company only redesigned the front of the new model and not the back. Parsons replied "it's like how you got breast implants and not butt implants. The front is what people see more."

78. Plaintiff also said, in no uncertain terms, "I am formally asking you both to please intervene and put a stop to the ongoing harassment, discrimination and retaliation that I continue to experience at Aston Martin Newport Beach."

79. **<u>Only a few weeks later on November 30, 2023</u>**, Greene sent Plaintiff an e-mail with a termination letter, which was effective December 1, 2023.

80. The termination letter is **<u>direct evidence</u>** that Defendants terminated Plaintiff because of her engagement in protected activity.

81. The termination letter, signed by Greene, began by indicating that Plaintiff complained about discrimination via e-mail on November 16, 2023. The same is attached hereto and incorporated as Exhibit "A".

82. In summary, Greene concluded that Plaintiff's November 16, 2023 complaint, was in "bad faith" and that because Plaintiff's complaints were causing "significant stress" to other co-workers, she was being terminated.

16

83. On or about January 10, 2024, Plaintiff filed a subsequent charge with the EEOC ("the second charge") indicating that her termination was, *inter alia*, an act nothing short of **blatant and illegal retaliation**.

<u>COUNT I</u>
**Violations of Title VII of the Civil Rights Act**
**42 U.S.C. § 2000 *et seq.***
**(Gender/Sex Discrimination, Sexual Harassment, Hostile Work Environment**
**and Retaliation)**
***Against All Defendants***

84. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

85. At all times relevant herein, Plaintiff was subjected to disparate treatment on the basis of sex/gender as described more fully above.

86. Plaintiff was subjected to severe and pervasive sexual gestures, advances, and comments by Defendant's employees, such that she was subjected to a hostile work environment.

87. Plaintiff was also subjected to a hostile work environment based on her gender and engagement in protected activity during her employment with Defendant.[2]

88. Plaintiff specifically opposed, rejected, and complained of inappropriate sexual comments/advances/gestures and his aforesaid discriminatory gender-related

---

[2] A plaintiff may maintain a retaliatory hostile work environment claim in the Ninth Circuit. *See e.g.* <u>Ray v. Henderson</u>, 217 F.3d 1234, 1244-45 (9th Cir. 2000)

COMPLAINT AND DEMAND FOR JURY TRIAL

comments both internally and with relevant federal and state agencies; however, the behavior did not cease and she continued to be subjected to a hostile work environment.

89. Plaintiff was further subjected to a retaliatory hostile work environment for opposing, rejecting, and complaining of inappropriate sexual comments, advances, and gestures and/or for complaining about the same.

90. On or about November 30, 2023, Plaintiff was terminated from Defendant because of her sex/gender and/or because of her clear and unequivocal engagement in protected activity.

91. Defendant's actions as aforesaid constitute violations of Title VII.

## <u>COUNT II</u>
**Violations of the California Fair Employment and Housing Act (FEHA)[3]**
**Cal. Gov. Code § 12940 *et seq.***
**(Gender/Sex Discrimination, Sexual Harassment, Hostile Work Environment and Retaliation)**
***Against All Defendants***

92. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

93. At all times relevant herein, Plaintiff was subjected to disparate treatment on the basis of sex/gender.

---

[3] With exceptions, FEHA claims are often construed coextensively with Title VII. *See e.g.* <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 682 (9th Cir. 2009)) (applying 9th Circuit Title VII case law on indirect employment doctrine to FEHA claim); <u>Orosa v. Therakos, Inc.</u>, 2011 U.S. Dist. LEXIS 93694, 2011 WL 3667485, at *3 (N.D. Cal. Aug. 22, 2011) (analyzing indirect employment in context of FEHA claim).

COMPLAINT AND DEMAND FOR JURY TRIAL

94. Plaintiff was subjected to severe and pervasive sexual gestures, advances, and comments by Defendant's employees, such that she was subjected to a hostile work environment.

95. Plaintiff was also subjected to a hostile work environment based on her gender and complaints of discrimination during her employment with Defendant.

96. Plaintiff specifically opposed, rejected, and complained of inappropriate sexual comments/advances/gestures and aforesaid discriminatory gender-related comments; however, the behavior did not cease and she continued to be subjected to a hostile work environment.

97. Plaintiff was further subjected to a retaliatory hostile work environment for opposing, rejecting, and complaining of inappropriate sexual comments, advances, and gestures and/or for complaining about his aforesaid gender-related discriminatory comments.

98. On or about November 30, 2023, Plaintiff was terminated from Defendant because of her sex/gender and/or because of her clear and unequivocal engagement in protected activity.

99. Defendant's actions as aforesaid constitute violations of the FEHA.

**COUNT III**
**Equal Pay Act ("EPA") Violations**
**29 U.S.C. §206(d)**
***Against All Defendants***

COMPLAINT AND DEMAND FOR JURY TRIAL

100.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

101.   At all times relevant herein, Plaintiff was paid different wages than those of the opposite sex for equal work requiring equal skill, effort and responsibility. Moreover, Plaintiff's work as it related to sales was performed under similar working conditions.

102.   The EPA, unlike Title VII, does not require any proof of discriminatory intent.

103.   During the course of Plaintiff's employment, she was subjected to disparate scales of pay with respect to sales commissions.

104.   For example, on at least one occasion, if Plaintiff sold a vehicle to a customer, she was forced to split her commission with another male sales representative who sometimes did not work or did substantially less work on the deal.

105.   Upon information and belief, other male sales representatives were not subject to similar disparate pay structures or forced commission splitting.

106.   Upon information and belief, Plaintiff was also told that her bonus commission would be reduced for "training" fees and other miscellaneous amounts that other male salespersons were not subject to during their employment.

107.   Effectively, this led to Plaintiff being paid less for "equal work" requiring "equal skill, effort and responsibility" under similar working conditions.

20

108.   Plaintiff has suffered cognizable damages under the EPA.

**COUNT IV**
**California Equal Pay Act ("CEPA")**
**Cal. Gov. Code 1197.5 (a)(1)(D)**
*Against All Defendants*

109.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

110.   Unlike the federal EPA, CEPA offers a broader conception "equal work" although it has been construed coextensively at least for pleading purposes. *See e.g.* Green v. Par Pools Inc., 111 Cal.App.4th 620, 623, 3 Cal. Rptr. 3d 844 (2003).

111.   At all times relevant herein, Plaintiff was paid different wages than those of the opposite sex for equal work requiring equal skill, effort and responsibility. Moreover, Plaintiff's work as it related to sales was performed under similar working conditions.

112.   During the course of Plaintiff's employment, she was subjected to disparate scales of pay with respect to sales commissions.

113.   For example, on at least one occasion, if Plaintiff sold a vehicle to a customer, she was forced to split her commission with another male sales representative who sometimes did not work or did substantially less work on the deal.

114.   Upon information and belief, other male sales representatives were not subject to similar disparate pay structures or forced commission splitting.

115.   Upon information and belief, Plaintiff was also told that her bonus commission would be reduced for "training" fees and other miscellaneous amounts that other male salespersons were not subject to during their employment.

116.   Effectively, this led to Plaintiff being paid less for "equal work" requiring "equal skill, effort and responsibility" under similar working conditions.

117.   Plaintiff has suffered cognizable damages under CEPA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date he first suffered discrimination/retaliation at the hands of Defendants until the date of verdict;

C.    Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, statutory multipliers or enhancements, emotional distress and/or pain and suffering damages (where legally permitted);

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable state law;

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable state law, if any; and

G.    Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law pursuant to Fed.R.Civ.P. 38.

Dated: March 14, 2024              HENNIG KRAMER RUIZ & SINGH, LLP


                                   _____/s/ Sam Brown_____
                                   Sam Brown
                                   Attorney for Plaintiff
                                   LAURA GRILLO


                                   KARPF, KARPF & CERUTTI, P.C.


                                   W. Charles Sipio, Esq.
                                   (pro hac vice forthcoming)
                                   3331 Street Road
                                   Two Greenwood Square, Suite 128
                                   Bensalem, PA 19020
                                   (215) 639-0801

Dated: March 14, 2024

COMPLAINT AND DEMAND FOR JURY TRIAL